UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROLAND PRICE,

                Plaintiff,

v.                                                       Case No. 15-cv-774-pp

PHILLIP FRIEDRICH,

                Defendant.

**DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 34)**

        The plaintiff, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his civil rights at the Wisconsin Secure Program Facility ("WSPF"). Dkt. No. 1. On August 7, 2017, the court screened the plaintiff's third amended complaint, and allowed him to proceed with two claims: (1) a First Amendment claim that the defendant retaliated against him because he filed an inmate complaint against the defendant's supervisor (Captain Brown), and (2) a Fourteenth Amendment claim that the defendant attempted to impede the plaintiff's ability to litigate his appellate cases. Dkt. No. 29 at 4-5, 7.

        The defendant has filed a motion for partial summary judgment, arguing that the plaintiff failed to exhaust administrative remedies on his First Amendment retaliation claim. Dkt. No. 34. The court will grant the motion for partial summary judgment and will dismiss the First Amendment retaliation claim.

1

## I. FACTS[1]

When the events in the complaint occurred, the plaintiff was an inmate at WSPF. Dkt. No. 28 at ¶¶ 7-32. The defendant is a Correctional Officer at WSPF. Id. at ¶3.

On or around September 14, 2011, the defendant confiscated the plaintiff's "property"—a review of the entire complaint hints that this "property" was comprised of legal materials—as contraband because it had a piece of clear scotch tape attached to it. Id. at ¶¶7-11. The plaintiff alleges that the defendant was "angry," "heated," "infuriated," "furious," "argumentative" and "aggressive" as he took the plaintiff's property, and that the defendant threatened to place the plaintiff in segregation. Id. at ¶10. The plaintiff's mother called the defendant to ask about the confiscated property; the defendant responded that he had sent the property to the plaintiff's mother's house by "Spee-Dee," and that he had a receipt indicating that "Spee-Dee" had been unable to deliver the property. Id. at ¶12. The plaintiff says that his mother told the defendant that she'd lived at the same address for fifty years, and that she'd never received the property; the plaintiff asserts that the defendant lied about sending the property to the plaintiff's mother's home. Id. The plaintiff requested a copy of the receipt showing that the defendant had mailed the items to his mother, and

---

[1] The court takes facts in this section from the defendant's Proposed Findings of Fact, dkt. no. 39, the plaintiff's "declaration," dkt. no. 46, and the plaintiff's third amended complaint, dkt. no. 28, which the court construes as an affidavit at summary judgment. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996).

according to the plaintiff, "no signature appears on it at all of [the defendant]." Id.

A few days later, the defendant spoke to the plaintiff while on the cell block, and said, "You made the mistake it's on you go ahead and file your I.C.E. your property will not be allowed anyway; and it's out of my hands now." Id. at ¶13. The defendant then told the plaintiff that his property had been destroyed. Id. The plaintiff alleges that the defendant destroyed his property on purpose, to stop the plaintiff from filing inmate complaints and to stop him from participating in litigation. Id. at ¶14. The plaintiff asserts that his legal materials "meant his life and he felt traumatized and devastated" when the defendant destroyed them. Id. at ¶15. He believes that the defendant confiscated and destroyed his legal materials because he had filed "multiple complaints" against Captain Brown (the defendant's supervisor). Id. at ¶¶7, 9.

The plaintiff filed this federal lawsuit on June 26, 2015—almost four years after the events he describes in the complaint. Dkt. No. 1. The court allowed the plaintiff to proceed with a First Amendment retaliation claim based on the allegation that "(a) [the plaintiff] engaged in activity protected by the First Amendment (objecting to how the Brown conduct report was handled), (b) that [the defendant] caused him a deprivation likely to deter First Amendment activity in the future (by taking his materials so he could not file complaints or

3

participate in the legal process), and (c) that [the defendant] did this to stop him from filing complaints or legal actions."² Dkt. No. 29 at 4-5.

The issue the defendant has raised in the motion for summary judgment is whether the plaintiff exhausted his administrative remedies on his retaliation claim prior to bringing this lawsuit. To exhaust his administrative remedies, the plaintiff would have had to file an inmate complaint through the Inmate Complaint Review System ("ICRS"). The defendant states that Cindy O'Donnell, who is the Secretary of the Department of Correction's designee for making final agency decisions on offender complaints, searched the Inmate Complaint Tracking System ("ICTS") for all inmate complaints "relating to [the plaintiff's] clams in this lawsuit. ³ Dkt. No. 39 at ¶¶6-7. She found ten inmate complaints she thought were relevant. Id. at ¶7. The plaintiff states that "the ten complaints O'Donnell declares relevant to his retaliation are substantial to his claim," dkt. no. 46 at ¶6; he has not identified any other inmate complaints that he believes are relevant to his retaliation claim. Given that, the court reviewed only the ten inmate complaints that the defendant produced. See Dkt No. 40.

---

² Throughout the briefing documents, the plaintiff alleges that the defendant and the DOC "retaliated" against him in a variety of other ways, including transferring him to Columbia Correctional Institution. Dkt. No. 44 at 8. The court will not address those allegations here, because the court did not allow the plaintiff to proceed with those claims in its screening order. See Dkt. No. 29.

³ O'Donnell has access to the ICTS, a database that stores all documents and reports submitted and generated though the ICRS. Dkt. No. 39, ¶3.

The defendant appears to have produced every inmate complaint that the plaintiff filed between 2011 and 2012 that complained either about "legal property" and/or the defendant specifically. The court will discuss all ten inmate complaints below, even though only three of them (Dkt. Nos. 40-6, 40-7 and 40-8) appear to be directly relevant to the issues in the case.

The plaintiff's first two inmate complaints, filed on June 2, 2011, involve confiscation of religious items.[4] Dkt. No. 40-1 at 4. The first inmate complaint alleged that the plaintiff should be allowed to keep a rosary and other religious jewelry/pendants because they were "grandfathered" in. Dkt. No. 40-3 at 10. The Inmate Complaint Examiner ("ICE") dismissed this complaint because the property was "in excess" of the allowed limits. Id. at 2. The plaintiff filed an appeal, alleging that the defendant took the items in "retribution" and to "punish" him because "black inmate will not be catholic period." Dkt. No. 40-3 at 13. The Corrections Complaint Examiner ("CCE") recommended dismissing the appeal; the Secretary of the Department of Corrections ("the Secretary") agreed and dismissed the appeal. Id. at 5-6.

The plaintiff's second inmate complaint alleged that the defendant took his Bible and other religious texts because they were altered by the use of scotch tape (an item that inmates can purchase at the commissary). Dkt. No. 40-2 at 10. ICE concluded that the property was properly confiscated under §DOC 303.47, and dismissed the complaint. Id. at 2-3. The plaintiff filed an

---

[4] The court notes that June 2011 is three months before September 14, 2011, the date on which the plaintiff states that the incident with the defendant allegedly occurred. See Dkt. No. 28 at ¶¶ 8-10.

5

appeal, alleging that the confiscation was a "personal attack on [his] religious belief as a catholic." Id. at 13. CCE recommended dismissing the appeal; the Secretary agreed and dismissed the appeal. Id. at 5-6.

The plaintiff's third and fourth inmate complaints more directly relate to "legal" property. The plaintiff filed his third inmate complaint on June 15, 2011. Dkt. No. 40-4 at 1. He alleged that legal transcripts that he needed for his criminal appeal were "missing." Id. ICE dismissed the complaint because prison staff checked the property room and determined that the legal transcripts were not there. Id. at 3. The plaintiff appealed, and in his appeal he mentioned "CO Brown" and that he was "being abuse[d] for filing complaints." Dkt. No. 40-4 at 6. CCE recommended dismissing the appeal; the Secretary agreed and dismissed the appeal. Id. at 9-10.

The plaintiff filed his fourth inmate complaint on June 17, 2011. Dkt. No. 40-5 at 10. He alleged that the defendant planned to destroy his legal property before he could file a *writ of certiorari* in state court. Id. He asked the institution to "hold" his property through the exhaustion process. Id. ICE dismissed the complaint, noting that prison policy (specifically §DOC 301.13(1)) did not require the institution to hold contraband while the inmate appealed to CCE. Id. at 2-3. The plaintiff appealed, alleging that the property was not "contraband." Id. at 12. CCE recommended dismissing the appeal; the Secretary agreed and dismissed the appeal. Id. at 5-6.

The plaintiff filed all the above complaints months before the incident he describes in his federal civil rights complaint. The plaintiff's next three inmate

complaints, filed between November 2011 and January 2012, alleged that the property discussed above (both the religious and legal property) was improperly destroyed. Dkt. Nos. 40-6, 40-7, 40-8. One inmate complaint alleged that the "property room" stole his property, and the plaintiff lists his mother's address at the bottom (where he presumably wanted his property sent after it was deemed "contraband"). Dkt. No. 40-6. The other two inmate complaints alleged that the defendant destroyed the property without notice. Dkt. Nos. 40-7, 40-8. ICE rejected the first and third inmate complaints as untimely filed. Dkt. Nos. 40-6 at 2, 40-8 at 2. ICE rejected the second inmate complaint because it had been addressed in a prior inmate complaint. Dkt. No. 40-7 at 2. The plaintiff appealed only the third rejection, reiterating that he "did not receive any notice;" the Reviewing Authority upheld the rejection. Dkt. No. 40-8 at 4, 8.

The plaintiff filed three more inmate complaints while incarcerated at the Columbia Correctional Institution ("CCI"), alleging that some of his property from WSPF did not arrive at CCI. See Dkt. Nos. 40-9, 40-10, 40-11. The first inmate complaint mentions the defendant by name as the individual who packed up his property for transfer to CCI. See Dkt. No. 40-9 at 8. The second two inmate complaints involve issues with the "chain of command" that the plaintiff had to use to acquire his missing property at CCI. Dkt. Nos. 40-10, 40-11. ICE rejected the first complaint as untimely filed. Dkt. No. 40-9 at 2. ICE rejected the second and third inmate complaints because they complained of issues that already had been addressed in prior inmate complaints. Dkt. Nos. 40-10 at 2, 40-11 at 2. The plaintiff appealed only the first rejection, reiterating

7

that he was required to follow the "chain of command" prior to filing; the Reviewing Authority upheld the rejection. Dkt. No. 40-9 at 4, 25.

## II. DISCUSSION

### 1. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court, and it produces a "useful administrative record" for the district court to rely on. <u>Jones v. Bock</u>, 549 U.S. 199, 204 (2007) (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because agencies generally resolve claims much faster than federal courts. <u>Woodford</u>, 548 U.S. at 89. A district court "lacks discretion to resolve the claim on the merits" if the prisoner fails to properly exhaust administrative remedies. <u>Perez v. Wis. Dep't of Corr.</u>, 182 F.3d 532, 535 (7th Cir. 1999).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." <u>Dole v. Chandler</u>, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must "properly use the prison's grievance process" prior to filing a case in federal court. <u>Id</u>. "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1025 (7th Cir. 2002). "[I]t is the prison's requirements . . . that

9

define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

To exhaust administrative remedies through Wisconsin's ICRS, an inmate first must file an offender complaint with ICE within fourteen calendar days of the event giving rise to the complaint. §DOC 310.09(6). The complaint must "contain only one issue per complaint, and shall clearly identify the issue." §DOC 310.09(1)(e). An inmate complaint sufficiently identifies the issue if it "alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 560 (7th Cir. 2002). "The grievant need not lay out the facts, articulate legal theories, or demand particular relief." Id. The inmate complaint does not need to name all names, or lay out every possible legal theory. Wine v. Pollard, No. 08-CV-173-BBC, 2008 WL 4379236, at *2 (W.D. Wis. Sept. 23, 2008). But the complaint must "alert[] the prison to the nature of the wrong." Id. at 3. It needs to "object intelligibly to some asserted shortcoming." Strong, 297 F.3d at 650.

After the inmate files his inmate complaint, ICE "decid[es] the method best suited to determine the facts, including personal interviews, telephone calls, and document review . . . ." §DOC 310.11(3). ICE sends a recommendation to the appropriate reviewing authority within twenty working days of acknowledging the complaint. §DOC 310.11(11). The appropriate reviewing authority then makes a decision on the inmate complaint within ten working days of receiving the recommendation. §DOC 310.12(1).

If the appropriate reviewing authority dismisses the inmate complaint, the inmate can appeal that decision to CCE. §DOC 310.13(1). CCE sends a recommendation to the Office of the Secretary of the Department of Corrections within thirty-five days of receiving the appeal. §DOC 310.13(6). The Secretary must make a decision within ten working days after receiving CCE's recommendation. §DOC 310.14(1). If the inmate does not receive the Secretary's written decision within forty-five working days of CCE's acknowledgement of the appeal, the inmate can consider administrative remedies to be exhausted. §DOC 310.14(3).

3. Analysis

The defendant asserts that the plaintiff failed to properly exhaust his administrative remedies because he did not file any inmate complaints alleging that the defendant took his legal property in retaliation for the plaintiff filing inmate complaints against Captain Brown. The defendant produced the plaintiff's entire "Inmate Complaint History Report," which spans from May 2007 to April 2016, and provided the court with all the inmate complaints that mentioned the defendant and/or confiscation of "legal property." Dkt. No. 40-1. The plaintiff appears to agree that he did not file an inmate grievance specifically alleging that the defendant took his property in retaliation for the inmate complaints he filed against Captain Brown, and he does not identify any other inmate complaint that he believes did allege this. The plaintiff argues, however, that he generally complained about "retribution" in two of his appeals, which he says was sufficient to give the prison the notice needed to

11

investigate his complaint and resolve the issue. See Dkt. No. 50 at 3. He reiterates numerous times that he should not be held to a "heightened pleading standard."

As the court has indicated, the events that the plaintiff complains of occurred on or about September 14, 2011. The first complaint the plaintiff filed after that date was signed on November 19, 2011, and alleges that the *property room* took the plaintiff's property (including legal transcripts). Dkt. No. 40-6. This complaint does not mention the defendant.

The next one was signed on December 8, 2011. Dkt. No. 40-7. This one says that the defendant destroyed the plaintiff's property and that "he [the defendant] stated lack of funds." Id. at 5. The plaintiff says that the defendant did not explain "that he gave [the plaintiff] Spee-dee Delivery Service Inc." Id. The plaintiff discusses the phone call with his mother, and ends by accusing the defendant of destroying valuable property "without giving notice on destruction of property slip just destroyed my property." Id. The third complaint is dated January 10, 2011—that is an error, apparently, because the facility received the complaint on January 12, *2012*. Dkt. No. 40-8 at 7.

In his third complaint, the plaintiff stated only that the defendant destroyed his property without giving notice of destruction. Id.

The court first notes that all of these complaints were filed well past the fourteen-day date required by the IRCS procedures. If the plaintiff wanted to complain about the events that happened between September 14 and 30, 2011, he needed to file his inmate complaint between September 28 and October 14,

12

2011. Yet he did not sign his first post-incident complaint until November 19, 2011—well over a month later.

More to the point, however, not one of these three complaints alerted the prison system that the plaintiff believed that the defendant had destroyed his property in retaliation for the complaints the plaintiff had made against Brown. The plaintiff complains about the defendant destroying the plaintiff's property, but he tells the institution that the reason he is believes the destruction was a problem was because the defendant did not give him notice of the destruction. The institution had no way of knowing, by looking at these complaints, that the plaintiff believed that the defendant destroyed the plaintiff's property on purpose, to retaliate against the plaintiff for complaining about Brown.

The plaintiff did mention, on one occasion, the fact that he had been filing complaints. On June 16, 2011—three months *before* the events he describes in the complaint—the plaintiff filed an appeal from the dismissal of his third complaint, the one where he complained about the transcripts of his criminal trial going "missing." In this appeal, the plaintiff accused the defendant of having taken his transcripts. Dkt. No. 40-4 at 5. On the second page of that appeal, he stated, "Staff is aware nothing shall happen and laugh at this process I am being abuse for filing complaints discriminated against my property taken Bibles legal work." Id. at 6. This allegation arose in an appeal, filed three months before the events the plaintiff complains of here. The plaintiff does not explain who is abusing him. He does not identify the complaints he filed that he believes led to the alleged abuse. This one mention

13

of retaliation, made months before the events he complains of in this case and months before he filed his December 2011 complaint alleging that the defendant destroyed his property, did not put the institution on notice that he believed that the defendant destroyed his property because of the plaintiff's complaints against Brown.

The Wisconsin Administrative Code provides that an inmate must "clearly identify the issue" in the original complaint that is presented to the ICE because ICE is responsible for "investigating" and "determining the facts." ICE did not get the opportunity to investigate and determine the facts regarding the plaintiff's retaliation (or "retribution") claim because he did not raise the issue in his underlying inmate complaint. The plaintiff did not follow the prison's rules for filing a grievance, and the court finds that he failed to properly exhaust administrative remedies on his First Amendment retaliation claim.

The plaintiff argues that he followed the "chain of command," which requires "informal resolution" prior to filing an inmate complaint. Dkt. No. 46 at ¶4; see also Wis. Admin. Code §DOC 310.09. He states that he directly complained to the defendant about his retaliation claim. Even assuming that this is true, the plaintiff must pursue "all administrative remedies that the department of corrections has promulgated by rule." Wis. Admin. Code §DOC 310.05. This means the plaintiff was required to complete the ICRS process by actually filing an inmate complaint and appealing it all the way to CCE. Simply beginning the process, by seeking an "informal resolution," is not enough to exhaust administrative remedies.

Finally, the plaintiff states that inmate complaints are "rubber stamped" and that the ICRS is a "mockery" and "sham." Dkt. No. 46 at ¶2-3, 9. He states that the DOC doesn't conduct inmate interviews on any of the inmate complaints it receives. Id. at ¶¶2-3, 17. He also states that the ICRS is written "ambiguously" to "manipulate the outcome." Dkt. No. 46 at ¶32 and Dkt. No. 44 at 13. He argues that there must be a flaw in the system because so many of his inmate complaints have been denied or rejected.

The court has no reason to believe that the number of denials/rejections show an intent by the institution to "manipulate the outcome." As noted on his Inmate Complaint History Report, the plaintiff's complaints were denied or rejected because they lacked merit or were untimely. The plaintiff appears to have successfully filed ICRS complaints for years, dkt. no. 40-1, proving that the ICRS is not too "ambiguous" to navigate (at least for the plaintiff). While the court does not have information on whether ICE usually conducts interviews with inmates on their grievances, the reason ICE did not interview the plaintiff regarding this retaliation claim is because they didn't know about it. The plaintiff did not tell them that he believed that the defendant destroyed his property in retaliation for his complaints against Brown.

The plaintiff failed to properly exhaust administrative remedies on his First Amendment retaliation claim. The court will grant summary judgment in favor of the defendant on this claim, and will dismiss the claim.

## III. NEXT STEPS

On October 17, 2017, the court issued a scheduling order, requiring the parties to complete discovery by January 19, 2018 and to file dispositive motions by February 19, 2018. Dkt. No. 33. The defendants filed this motion for partial summary judgment less than a month later, on November 13, 2017, long before the discovery deadline. Dkt. No. 34. On December 1, 2017, the court received a motion from the plaintiff, asking for time to respond to the motion for partial summary judgment, and demanding various documents from the defendant. Dkt. No. 41. The defendant responded that he had no objection to the court giving the plaintiff more time to respond to the exhaustion motion, but asked the court to extend the general dispositive motions deadline, as well. Dkt. No. 42. The court granted that request, and extended the deadline for filing dispositive motions to July 13, 2018. Dkt. No. 43. The court also advised the plaintiff that if he wanted discovery, he should serve his discovery requests on the defendant, not file them with the court. Id.

Given the length of time it took the court to decide this motion for partial summary judgment, the defendant filed a second request, asking the court to stay the deadline for filing general dispositive motions. Dkt. No. 53. The court granted that motion by text-only order on June 25, 2018, and extended the dispositive motion deadline to the end of the day on September 20, 2018.

The current status of the case is that the plaintiff is proceeding on one claim—a Fourteenth Amendment claim that the defendant attempted to impede the plaintiff's ability to litigate his appellate cases. The parties should have

16

completed their discovery. If either party wishes to file a dispositive motion—a motion for summary judgment—on the Fourteenth Amendment claim, that party must file that motion in time for the court to receive it by the end of the day on **September 20, 2018**. Responses are due thirty days after a party receives a dispositive motion. If either party needs additional time to file a dispositive motion, he should ask the court for an extension of time *before* September 20, 2018.

## IV. CONCLUSON

The court **GRANTS** the defendants' motion for partial summary judgment for failure to exhaust administrative remedies. Dkt. No. 34. The court **DISMISSES** the plaintiff's First Amendment retaliation claim.

Dated in Milwaukee, Wisconsin this 16th day of July, 2018.

                                      **BY THE COURT:**

                                      **HON. PAMELA PEPPER**
                                      **United States District Judge**